```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - X
DUNKIN' DONUTS FRANCHISED RESTAURANTS   :
LLC,                                                    ECF CASE
a Delaware Limited Liability Company,   :
BASKIN-ROBBINS FRANCHISED SHOPS LLC,
a Delaware Limited Liability Company,   :   06 Civ. 8237 (WCC)
DB REAL ESTATE ASSETS I LLC,
a Delaware Limited Liability Company,   :
DD IP HOLDER LLC,
a Delaware Limited Liability Company,   :
BR IP HOLDER LLC,
a Delaware Limited Liability Company,   :


                          Plaintiffs,   :


          - against -                   :       OPINION
                                              AND ORDER
RIJAY, INC.,                            :
a New York Corporation,
MAHENDRA G. PATEL,                      :
a Resident of New York,
NITA PATEL,                             :
a Resident of New York,
                                        :
                          Defendants.
- - - - - - - - - - - - - - - - - - - - X
```

**A P P E A R A N C E S :**

                                         O'ROURKE & DEGEN, PLLC
                                         225 Broadway, Suite 715
                                         New York, New York 10007

RONALD D. DEGEN, ESQ.
SCOTT G. GOLDFINGER, ESQ.
        Of Counsel
                                         - and -

                                         GRAY, PLANT, MOOTY, MOOTY
                                           & BENNETT, P.A.
                                         2600 Virginia Avenue, N.W.,
                                         Suite 1111
                                         Washington, D.C.  20037

ERIC L. YAFFE, ESQ.
STEPHEN J. VAUGHAN, ESQ.

        Of Counsel                      **Attorneys for Plaintiffs**

**Copies E-Mailed to Counsel of Record**

**A P P E A R A N C E S :   (continued)**

                                        MARKS & KLEIN, LLP
                                        **Attorneys for Defendants**
                                        63 Riverside Avenue
                                        Red Bank, New Jersey 07701

GERALD A. MARKS, ESQ.

        Of Counsel

CONNER, Sr. D.J.:

Plaintiffs Dunkin' Donuts Franchised Restaurants LLC ("Dunkin' Donuts"),[1] Baskin-Robbins

Franchised Shops LLC ("Baskin-Robbins"),[2] DB Real Estate Assets I LLC ("DB Real Estate"),[3] DD

IP Holder LLC ("DD IP Holder")[4] and BR IP Holder LLC ("BR IP Holder")[5] bring this action

---

[1] Dunkin' Donuts is a Delaware limited liability company with its principal place of business in Massachusetts.  (*See* Complt. ¶ 1.)  It is engaged in the business of franchising Dunkin' Donuts shops throughout the United States to independent business persons.  (*See id.*)  Dunkin' Donuts and its franchisees currently operate approximately 4,100 shops in the United States and 1,800 shops abroad.  (*See id.* ¶ 19.)

[2] Baskin-Robins is a Delaware limited liability company with its principal place of business in Massachusetts.  (*See* Complt. ¶ 3.)  Baskin-Robins is authorized to use the trademarks, service marks and trade names owned by BR IP Holder and to sublicense Baskin-Robins franchises to independent business persons.  (*See id.*)  Baskin-Robins and its franchisees currently operate approximately 2,200 shops in the United States and 2,600 shops abroad.  (*See id.* ¶ 26.)

[3] DB Real Estate is a limited liability company with its principal place of business in Massachusetts.  (*See* Complt. ¶ 6.)  It is engaged in the business of leasing properties to Dunkin' Donuts franchisees to be used for operating Dunkin' Donut shops.  (*See id.*)

[4] DD IP Holder is a Delaware limited liability company with its principal place of business in Massachusetts and is the owner of the trademark, service mark and trade name "Dunkin' Donuts," and related marks.  (*See* Complt. ¶ 2.)  It has the exclusive license to use and license others to use these marks to identify its doughnut shops and other products sold therein and has used them continuously since approximately 1960.  (*See id.*)  Unless otherwise indicated, Dunkin' Donuts and DD IP Holder will be referred to collectively as "Dunkin' Donuts."

[5] BR IP Holder is a Delaware limited liability company with its principal place of business in Massachusetts and is the owner of the trademark, service mark and trade name "Baskin-Robbins," and related marks.  (*See* Complt. ¶ 4.)  It has the exclusive license to use and license others to use these marks to identify its ice cream stores and other products sold therein and has used them continuously since approximately 1947.  (*See id.*)  Unless otherwise indicated, Baskin-Robins and BR IP Holder will be referred to collectively as "Baskin-Robins."

1

against Rijay, Inc. ("Rijay"),[6] Mahendra G. Patel ("M. Patel") and Nita Patel ("N. Patel")[7] for breach of contract, as well as unfair competition and trademark and trade dress[8] infringement in violation of the Lanham Act, 15 U.S.C. §§ 1051, *et seq.*[9]  Plaintiffs allege that Rijay entered into franchise agreements with Dunkin' Donuts and Baskin-Robins pursuant to which it operated Dunkin' Donuts and Baskin-Robins franchise stores, and that they subsequently terminated the agreements because of defendants' repeated failures to comply with labor and tax laws governing the stores' operations. Plaintiffs claim that defendants have continued to operate their stores with the use and enjoyment of the Dunkin' Donuts and Baskin-Robins trademarks, trade names and trade dress in violation of the agreements and the Lanham Act.

Defendants commenced a related action in New York State Supreme Court seeking, *inter alia*, a declaratory judgment that they are not in breach of the franchise agreements and an injunction preventing the termination of the contracts.  Defendants now move to dismiss this action in favor

---

[6] Rijay is a New York corporation with its principal place of business in New York.   (*See* Complt. ¶ 7.)

[7] M. Rijay and N. Rijay, at all relevant times, were officers and shareholders of Rijay and personally guaranteed the obligations of their corporation.  (*See* Complt. ¶¶ 9-10.)

[8] Trade dress has been described as the "the total image of the business" and "overall appearance," and may include "features such as size, shape, color or color combinations, texture, graphics, or even particular sales techniques."  *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 765, n.1 (1992) (internal quotation marks and citations omitted).  For example, a trade dress of a restaurant may "include the shape and general appearance of the exterior of the restaurant, the identifying sign, the interior kitchen floor plan, the decor, the menu, the equipment used to serve food, the servers' uniforms and other features reflecting on the total image of the restaurant."  *See id.*

[9] Trademark infringement and trade dress infringement receive essentially the same protection under the Lanham Act, 15 U.S.C. §§ 1051, *et seq.  See Two Pesos*, 505 U.S. at 767-78, 776.

of the parallel state court proceeding, or, in the alternative, defendants request that we stay this litigation pending the resolution of the state court action.  For the foregoing reasons, defendants' motion is denied.

## BACKGROUND

Plaintiffs' Complaint alleges the following facts.  Rijay, as a franchisee of plaintiffs, operated Dunkin' Donuts shops in Goshen, New York (the "Goshen shop") pursuant to a franchise agreement dated April 7, 2003 (the "Goshen Franchise Agreement"), and in Harriman, New York (the "Harriman shop") pursuant to a franchise agreement dated November 27, 2004 (the "Harriman Franchise Agreement").  (*See id.* ¶ 7.)  In addition, Rijay operated  "combo" shops[10] offering both Dunkin' Donuts and Baskin-Robins' products in Chester, New York (the "Chester Shop") pursuant to a franchise agreement dated June 17, 2003 (the "Chester Franchise Agreement"), and in New Paltz, New York (the "New Paltz Shop") pursuant to a franchise agreement dated June 17, 2003 (the "New Paltz Franchise Agreement").  (*See id.* ¶ 8.)

Pursuant to each franchise agreement, defendants were granted the right to use the trademarks, trade names and trade dress of each respective establishment.  (*See id.* ¶¶ 7-8.)  Each franchise agreement contained a provision providing that the "'FRANCHISEE shall be in default under this Agreement . . . [i]f any other franchise agreement between FRANCHISEE and FRANCHISOR or any affiliated entity is terminated by reason of FRANCHISEE's default thereunder . . . .'" (*See* Complt. ¶ 28 (alterations in original).)  Thus, the breach and resulting

---

[10] Although Dunkin' Donuts and Baskin-Robins operate as separate corporations, they pursue or permit joint development of units in selected markets, which are commonly referred to as "combo" shops.  (*See* Complt. ¶ 5.)

termination of one franchise agreement constituted grounds for the termination of all the other franchise agreements and each of them individually.  (*See id.*)  The agreements also contained cross-guarantee clauses under which defendants are each jointly and severally liable for each other's defaults.  (*See id.* ¶ 30.)

In addition, DB Real Estate leased to defendants the premises where the New Paltz Shop was located, and the lease (the "New Paltz Lease") provided DB Real Estate the right to terminate the lease upon the termination of the New Paltz Franchise Agreement.  (*See id.* ¶ 31.)  Upon termination of the New Paltz Lease, plaintiffs have the right to physically repossess the premises at which the New Paltz shop is located.  (*See id.* ¶ 32.)  Defendants are obligated to pay DB Real Estate all damages, with interest, costs and expenses, including reasonable attorneys' fees, incurred by reason of any default or termination of the New Paltz Lease, which M. Patel agreed to personally guarantee.  (*See id.* ¶¶ 33-34.)

Plaintiffs allege that defendants have materially breached the franchise agreements, thereby allowing plaintiffs' to terminate the agreements.  (*See id.* ¶ 40.)  Specifically, they allege that defendants have repeatedly and knowingly "participated in a fraudulent scheme to avoid paying federal and state payroll taxes due and owing to the [Internal Revenue Service] and the State of New York, in violation of employee income tax withholding laws and regulations."  (*See id.* ¶ 37.)  Plaintiffs also allege that defendants have repeatedly and knowingly failed to pay their employees overtime compensation for work in excess of forty hours per week in the franchised shops.  (*See id.* ¶ 36.)  Lastly, they allege that defendants "repeatedly failed to maintain accurate financial records each week."  (*See id.* ¶ 38.)

Consequently, plaintiffs sent to defendants a "Notice of Default and Termination" (the

"Notice") terminating each of the franchise agreements effective immediately upon defendants' receipt of the Notice.  (*See id.* ¶ 41.)  The Notice stated the aforementioned grounds for termination and requested that defendants immediately comply with their post-termination obligations as set forth in the respective franchise agreements.[11]  (*See id.*)  Plaintiffs allege that, despite the Notice, defendants have continued to use the trademarks, trade names and trade dress of both Dunkin' Donuts and Baskin-Robins, and that their continued use violates the Lanham Act.  (*See id.* ¶¶ 42, 53, 57, 62.)

Plaintiffs filed this action on October 10, 2006 and served the Summons and Complaint on all defendants on October 13, 2006.  The Complaint seeks: (1) a declaratory judgment stating that defendants' conduct violated the terms of the franchise agreements and constitutes grounds for termination of the agreements and the New Paltz Lease; (2) an injunction enforcing the termination of the franchise agreements and New Paltz Lease, enjoining defendants from using the Dunkin' Donuts and Baskin-Robins trademarks, trade names and trade dress and directing defendants to comply with all of their post-termination obligations as provided in the franchise agreements and the New Paltz Lease; (3) prejudgment interest in accordance with 15 U.S.C. § 1117; (4) costs and attorneys' fees incurred in connection with this action as provided for under the franchise agreements and the Lanham Act, 15 U.S.C. § 1117; and (5) such other relief that the Court deems just and proper.  (*See id.* (Prayer for Relief).)

On September 29, 2006, shortly before the filing of the present action, defendants filed a related action in New York Supreme Court, entitled *Rijay, Inc., Mahendra Patel and Nital Pitel v.*

---

[11] As a result, the New Paltz Lease between DB Real Estate and defendants was also terminated.  (*See id.*)

5

*Dunkin' Brands, Inc., Dunkin' Donuts, Inc., Sean Riley and Richard Basgen*,[12] but did not serve the Complaint upon the defendants until November 1, 2006.  (*See* Pls. Mem. Opp. Defs. Mot. at 10.) Defendants' state court action seeks a declaratory judgment that they are not in breach of the franchise agreements and an injunction enjoining their termination.  In addition to Dunkin' Donuts, it names as defendants Sean Riley[13] and Richard Basgen, the Franchise Service Manager for Dunkin' Brands, Inc.  On November 21, 2006, Dunkin' Donuts and Basgen moved to dismiss the state court action pursuant to N.Y. C.P.L.R. 3211(a)(4), which provides for dismissal or other appropriate relief when "there is another action pending between the same parties for the same cause of action in a court of any state or the United States."  (*See* Pls. Mem. Opp. Defs. Mot., Ex. 1.)  Apparently, the state court has not decided their motion, and the state action is essentially at the same stage of litigation as this one.  Defendants in this case now request that we dismiss or, in the alternative, stay the present action under the *Colorado River* abstention doctrine.  *See Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976).


## DISCUSSION

"Abstention under *Colorado River* applies where, as in the instant case, 'state and federal courts exercise concurrent jurisdiction simultaneously.'"[14]  *Vill. of Westfield v. Welch's,* 170 F.3d

---

[12] Dunkin' Donuts, Inc. is the predecessor-in-interest to Dunkin' Donuts Franchised Restaurants LLC and is thus the same party.  (*See* Complt. ¶ 1.)

[13] The identity of Riley is unclear.

[14] "Federal and state proceedings are 'concurrent' or 'parallel' for purposes of abstention when the two proceedings are essentially the same; that is, there is an identity of parties, and the issues and relief sought are the same."  *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Karp*, 108 F.3d 17, 22 (2d Cir. 1997) (citing *Sheerbonnet, Ltd. v. Am. Express Bank Ltd.*, 17 F.3d 46, 49-50 (2d

116, 120 (2d Cir. 1999) (citation omitted).  Abstention is an "extraordinary" and "narrow exception"

to the duty of a federal district court to adjudicate a controversy properly before it and is justified

only in "exceptional circumstances." *Colorado River*, 424 U.S. at 813 ("Abstention from the exercise

of federal jurisdiction is the exception, not the rule."); *Welch's,* 170 F.3d at 121; *Inn Chu Trading*

*Co., Ltd. v. Sara Lee Corp.*, 810 F. Supp. 501, 507 (S.D.N.Y. 1992).[15]  Indeed, "as between state and

_____

Cir. 1994); *Telesco v. Telesco Fuel & Masons' Materials, Inc.*, 765 F.2d 356, 362 (2d Cir. 1985); *Arkwright-Boston Mfrs. Mut. Ins. Co. v. City of New York*, 762 F.2d 205, 211 (2d Cir. 1985) ("parties in state and federal actions must be substantially the same")).  In the present case, there is no doubt that the state court proceeding and this action are "concurrent" for purposes of *Colorado River* abstention.  Both actions involve substantially the same parties and seek declaratory judgments as to whether the franchisees are in breach of the franchise agreements and corresponding injunctions with respect to the termination of the agreements.  *See Karp*, 108 F.3d at 22 ("Because (1) the primary claim for declaratory relief raised by National Union in the instant action will be raised and decided in the state action, and (2) National Union and the estate of Stephanie Freeman are parties in both suits, the Connecticut direct action is a 'concurrent' proceeding to the instant action.").

[15] In *Brillhart v. Excess Insurance Company of America*, the Supreme Court held that, in actions brought under the Declaratory Judgment Act, a district court's decision to stay or dismiss the action in favor of a parallel state court proceeding is committed to its sound discretion. 317 U.S. 704 (1942); *see also Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995).  It rejected the application of the *Colorado River* doctrine, reasoning that federal district courts always have discretion to exercise jurisdiction over declaratory actions, regardless of the pendency of a parallel state court proceeding. *See Wilton*, 515 U.S. at 286; *see also* 28 U.S.C. § 2201(a) ("[A federal district court] *may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.") (emphasis added).  Although plaintiffs seek a declaratory judgment in the present action, they also seek damages for, *inter alia*, breach of contract, unfair competition and trademark and trade dress infringement.  Accordingly, we have a basis for jurisdiction independent of the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, and therefore the *Colorado River* "exceptional circumstances" standard, and not the discretionary standard of *Wilton*, applies here.  *See Welch's*, 170 F.3d at 125 n.5; *ESI, Inc. v. Coastal Corp.*, 61 F. Supp. 2d 35, 72 n.88 (S.D.N.Y. 1999) (Conner, J.).

Moreover, to the extent that courts in this circuit have declined to exercise jurisdiction over claims seeking non-declaratory relief by dismissing or staying the action irrespective of the *Colorado River* doctrine, we decline to follow them in light of Supreme Court precedent mandating the exercise of federal jurisdiction absent "extraordinary circumstances" justifying dismissal or a stay. *See, e.g, Colorado River*, 424 U.S. at 813-14 ("'[Abstention] was never a doctrine of equity that a federal court should exercise its judicial discretion to dismiss a suit merely because a State court could entertain it.'") (quoting *Ala. Pub. Serv. Comm'n v. S. Ry. Co.*, 341 U.S. 341, 361 (1951)); *Sara*

federal courts, the rule is that 'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction . . . .'" *Colorado River*, 424 U.S. at 817 (quoting *McClellan v. Carland*, 217 U.S. 268, 282 (1910)). This rule "stems from the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Colorado River*, 424 U.S. at 817. "Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest." *Id.* at 813 (quotation marks omitted). Thus, abstention is appropriate only if the balance of the following factors overcomes the strong presumption in favor of exercising jurisdiction: (1) the assumption of jurisdiction by either court over any *res* or property; (2) the inconvenience of the federal forum; (3) the order in which jurisdiction was obtained; (4) the avoidance of piecemeal litigation; (5) whether state or federal law supplies the rule of decision; and (6) whether the state court proceeding will adequately protect the rights of the party seeking to invoke federal jurisdiction. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983); *Colorado River*, 424 U.S. at 818-19; *Welch's*, 170 F.3d at 121; *United States v. Pikna*, 880 F.2d 1578, 1582 (2d Cir. 1989).

"[T]he decision whether to dismiss a federal action because of parallel state-court litigation does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone*, 460 U.S. at 16; *see also Pikna*, 880 F.2d at 1582 ("On a motion for abstention under *Colorado River*, the presumption is in favor of the federal court's retaining jurisdiction, not yielding

---

*Lee Corp.*, 810 F. Supp. at 507 ("A district court should limit its discretion to stay proceedings to 'exceptional circumstances.'") (citations omitted).

it.") (citations omitted); *Laikin v. Paprin*, No. 83 Civ. 8946, 1984 WL 364, at *2 (S.D.N.Y. May 10, 1984) ("In balancing these factors, there is a presumption in favor of assuming jurisdiction."). "Thus, only a demonstration of [] clear and convincing circumstances by the moving party will warrant a stay." *Laikin*, 1984 WL 364, at *2 (citing *Colorado River*, 424 U.S. at 818).

Moreover, the Supreme Court has made clear that "a stay is as much a refusal to exercise federal jurisdiction as a dismissal." *Moses H. Cone*, 460 U.S. at 28; *see also Royal & Sun Alliance Ins. Co. of Canada v. Century Int'l Arms, Inc.*, 466 F.3d 88, 96 (2d Cir. 2006); *Pikna*, 880 F.2d at 1582; *Sara Lee Corp.*, 810 F. Supp. at 507. As one district court stated: "It is beyond belief that this weighty obligation[, the exceptional-circumstances test,] can be escaped by a court that chooses not to exercise its jurisdiction but gives the label of 'stay' to what will in effect be a dismissal." *Sara Lee Corp.*, 810 F. Supp. at 508 n.15 (internal quotation marks omitted; alternations in original). Indeed, the Supreme Court has explained:

> When a district court decides to dismiss or stay under *Colorado River*, it presumably concludes that the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties. If there is any substantial doubt as to this, it would be a serious abuse of discretion to grant the stay or dismissal at all. . . . Thus, the decision to invoke *Colorado River* necessarily contemplates that the federal court will have nothing further to do in resolving any substantive part of the case, whether it stays or dismisses.

*Moses H. Cone*, 460 U.S. at 28 (internal citation omitted).

Turning to the first factor – the assumption of jurisdiction by either court over any *res* – neither the present action nor the state court action involves a dispute over any property, and the neutrality of this factor militates in favor of exercising jurisdiction. *See Woodford v. Community Action Agency of Greene County, Inc.*, 239 F.3d 517, 522 (2d Cir. 2001) (quoting *Welch's*, 170 F.3d at 122 ("We have held that the absence of a res 'point[s] toward exercise of federal jurisdiction.'"))

(citing *DeCisneros v. Younger*, 871 F.2d 305, 307 (2d Cir. 1989)*, Bethlehem Contracting Co. v. Lehrer/McGovern Inc.*, 800 F.2d 325, 327 (2d Cir. 1986))).   The second factor regarding the inconvenience of the federal forum is also neutral.   In their initial moving papers, defendants concede: "As to Factor 2, both courts sit in New York so there is little inconvenience, if any, for either party."  (*See* Defs. Mem. Supp. Mot. at 4.)  *See Woodford*, 239 F.3d at 523 ("with respect to the second *Colorado River* factor, 'where the federal court is just as convenient as the state court, that factor favors retention of the case in federal court.'") (quoting *Welch's*, 170 F.3d at 122 (internal quotation marks omitted)); *see also DeCisneros*, 871 F.2d at 307; *Bethlehem Contracting*, 800 F.2d at 327-28.   Defendants, realizing the effect of their concession, attempted to qualify this argument in their Reply Brief by emphasizing that they will be forced to endure "economic inconvenience" as a result of litigating in two jurisdictions.   We are unconvinced.   The Second Circuit explicitly rejected the identical argument in *Welch's*.   It explained: "This argument would eviscerate *Colorado River*, as federal courts consider abstaining under *Colorado River* only in cases where there are concurrent and simultaneous federal and state proceedings."   *Welch's*, 170 F.3d at 122.   Moreover, if defendants are seriously concerned about the "economic inconvenience," they have the obvious option to voluntarily dismiss their state action without prejudice and assert those claims in the present action, thereby avoiding simultaneous litigation in two fora.  *See Ryan v. Volpone Stamp Co.*, 107 F. Supp. 2d 369, 395 (S.D.N.Y. 2000) (denying the defendants' motion for abstention when, *inter alia*, all of the plaintiffs in the state action could obtain complete relief just as readily in the federal court as in the state court).

      As to the third factor – the order in which jurisdiction was obtained – the parties expended unnecessary effort arguing as to which action was filed first.   Beyond the fact that any advantage

10

under the present circumstances would be negligible,[16] the law is clear that "[t]his factor does not

turn exclusively on the sequence in which the cases were filed, 'but rather in terms of how much

progress has been made in the two actions.'" *Welch's*, 170 F.3d at 122 (quoting *Moses H. Cone*, 460

U.S. at 21); *see also ESI, Inc.*, 61 F. Supp. 2d at 72 ("Further, where, as here, there have been no

proceedings on the merits, and discovery has not yet been completed in state court, 'the fact that the

state action was commenced before [Delasa filed its cross-claim against Tenneco] carries little

weight.'") (internal footnote omitted) (quoting *Welch's*, 170 F.3d at 122); *Laikin*, 1984 WL 364, *3

("Although the state court action was commenced first, that in itself is not enough to require the

application of the doctrine of comity.").  This Court has no reason to believe that the state court

action has progressed any further than the present litigation, and the neutrality of this factor once

again militates in favor of the exercise of federal jurisdiction.  *See, e.g.*, *Woodford*, 239 F.3d at 522.

       Fourth, we must consider whether abstention would avoid or discourage piecemeal litigation.

However, quite the opposite is the case here.[17]  If we were to dismiss or stay this action, plaintiffs

would undoubtedly assert all their claims that they had brought in this action in state court to avoid

---

[16] *See, e.g.*, *Ryan*, 107 F. Supp. 2d at 395 n.16 ("The parties dispute whether the state court obtained jurisdiction two weeks or two months after the federal court.  Since both courts obtained jurisdiction approximately around the same time, the distinction is not crucial.").

[17] We must clarify the difference between duplicative and piecemeal litigation, neither one of which is desirable.  Duplicative litigation occurs when two substantially identical lawsuits proceed at the same time.  For example, in the present case, defendants are seeking a declaratory judgment in state court as to whether they are in breach of the franchise agreements.  Plaintiffs are seeking the same here.  This is duplicative litigation.  However, piecemeal litigation occurs when different claims arising out of the same transaction or occurrence are being prosecuted in two different litigations.  For example, defendants are seeking a declaratory judgment as to whether they are in breach of the franchise agreements, and plaintiffs have asserted a claim for trademark infringement in federal court, the viability of which is based upon whether defendants breached the agreements.  This is piecemeal litigation.

being subsequently collaterally estopped from litigating them.  However, the present state court

action only names Dunkin' Donuts as a defendant and not Baskin-Robins, DB Real Estate, DD IP

Holder or BR IP Holder, all of which have claims against defendants separate and distinct from those

of Dunkin' Donuts.[18]  Consequently, they would have to commence a separate litigation with the

hope of consolidating the two actions.[19]  Conversely, defendants can bring all of their claims from

the state court action as counterclaims in this action.  *See Ryan*, 107 F. Supp. 2d at 395 (declining

to dismiss the federal action on abstention grounds when the defendant could obtain complete relief

just as readily in the federal court as in the state court).  While there may be a certain amount of

duplication of effort and conflicting results if the state case and the federal litigation were to proceed

simultaneously, "countervailing considerations dictate that this Court not stay the federal suit[,]"

particularly in light of the fact that plaintiffs have asserted claims under the Lanham Act, a statute

that expressly provides the federal courts with jurisdiction over these types of disputes.  *See Town*

*of Warwick v. N.J. Dep't of Envtl. Prot.*, 647 F. Supp. 1322, 1325 (S.D.N.Y. 1986); *see* 28 U.S.C.

§ 1331; 15 U.S.C. § 1121(a).[20]

---

[18] For example, DB Real Estate seeks to enforce the termination of the New Paltz Lease, and DD IP Holder seeks to enjoin plaintiffs from using its trademarks, trade names and trade dress in violation of the franchise agreements and the Lanham Act.

[19] Although defendants claim "upon information and belief" that all plaintiffs not named in the state court action are wholly owned subsidiaries, agents and/or instrumentalities of Dunkin' Donuts and thus the joinder of any additional parties in the state court action is unnecessary, we cannot decline to exercise federal jurisdiction – "virtually an unflagging obligation" – on the basis of an unsubstantiated allegation made by the party requesting abstention.

[20] 28 U.S.C. § 1331 grants federal district courts original jurisdiction over all civil actions arising under the laws of the United States and, in particular, the Lanham Act provides:

The district and territorial courts of the United States shall have original jurisdiction and the courts of appeal of the United States (other than the United States Court of Appeals for the Federal Circuit) shall have appellate jurisdiction, of all actions

The fifth factor – whether state or federal law supplies the rule of decision – also counsels against ordering a stay in the present action.  If we were to exercise our jurisdiction, federal law would substantially control adjudication of the matter.  Without examining the documents that control plaintiffs' and defendants' business arrangement, it appears that the threshold issue is whether defendants breached the franchise agreements and New Paltz Lease.  Although the interpretation of the agreements is governed by state law, the issue of whether defendants breached the agreements is dependent upon whether they violated certain federal tax and labor laws.  *Cf. Welch's*, 170 F.3d at 124 (finding that the fifth factor weighed in favor of exercising jurisdiction when federal law provided the background for the interpretation of the contract at issue).  Additionally, federal law obviously governs plaintiffs' claims for trademark and trade dress infringement under the Lanham Act.  Accordingly, this factor militates in favor of exercising jurisdiction.  *See Moses H. Cone*, 460 U.S. at 26 ("the presence of federal-law issues must always be a major consideration weighing against surrender."); *Welch's*, 170 F.3d at 124 ("the presence of federal issues strongly advises exercising federal jurisdiction . . . .").  Moreover, even if state law issues were to dominate this case,[21] abstention would still be inappropriate because dismissal is only warranted when the federal issues are of *de minimis* importance *and* "state law issues are novel or particularly complex."  *See Welch's*, 170 F.3d at 124.  This is clearly not the case here.

Finally, the sixth factor – whether the state court proceeding will adequately protect the rights

arising under this chapter, without regard to the amount in controversy or to diversity or lack of diversity of the citizenship of the parties.
15 U.S.C. § 1121(a).

[21] This litigation may ultimately involve more state law claims than it does presently in the event that defendants bring as counterclaims the state-law causes of action that they have asserted in the state court proceeding.

of the party seeking to invoke federal jurisdiction – is consequential only when the answer is negative and thus weighs in favor of federal jurisdiction. *See id.* at 124 (quoting *Moses H. Cone*, 460 U.S. at 28). This is because "our task under *Colorado River* is not to determine whether there is some substantial reason for the exercise of federal jurisdiction; rather, we must ascertain whether there exist exceptional circumstances that justify the surrender of federal court jurisdiction." *See id.* (citing *Moses H. Cone*, 460 U.S. at 25-26). The fact that the state court is competent to adjudicate plaintiff's claims is largely irrelevant. Accordingly, we are unable to discern any circumstances that would justify surrendering federal jurisdiction, and we have "'little or no discretion to abstain in a case [that] does not meet traditional abstention requirements.'" *Id.* at 125 (quoting *In re Joint E. & S. Dist. Asbestos Litig.*, 78 F.3d 764, 775 (2d Cir. 1996)).

## CONCLUSION

For the reasons stated above, defendants' motion to dismiss this action or, in the alternative, to stay it during the pendency of the state court action is denied.

SO ORDERED.
Dated: White Plains, NY
      May 16, 2007

*William C. Conner*

Sr. United States District Judge

14